UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
No. 1:19-cv-1105

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

                Plaintiff,

v.

MCKINLEY-CAROLINALECHASE,
LLC,

                Defendant.

**COMPLAINT FOR
DECLARATORY RELIEF**

Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia" or "Plaintiff"), through its undersigned counsel, complaining of Defendant McKinley-CarolinaLeChase, LLC ("MCL" or "Defendant"), hereby alleges as follows:

## JURISDICTION AND VENUE

1. This is an action for declaratory judgment under 28 U.S.C. § 2201(a).

2. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. § 1332(a)(1), diversity of citizenship. As shown below, the parties are citizens of different states, and the amount in controversy exceeds the jurisdictional limits of this Court.

3. Philadelphia is a corporate entity incorporated and existing under the laws of the Commonwealth of Pennsylvania with a principal office and place of business located in Bala Cynwyd, Pennsylvania. At all relevant times alleged herein, Philadelphia has been

duly authorized to conduct business in the State of North Carolina as a performance and payment bond surety.

4. MCL is a limited liability company organized and existing under the laws of the State of North Carolina with a principal office and place of business located in Wilmington, North Carolina. Upon information and belief, MCL is a joint venture whose members consist of: (a) McKinley Building Corp., a corporate entity incorporated and existing under the laws of the State of North Carolina with a principal office and place of business located in Wilmington, North Carolina; and (b) LeChase Construction Services, LLC, a limited liability company organized and existing under the laws of the State of New York with a principal office and place of business located in Rochester, New York. Further upon information and belief, and at all relevant times alleged herein, MCL has been authorized to conduct business in the State of North Carolina as a general contractor in the construction industry.

5. The amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees, and this Court otherwise has jurisdiction over the subject matter hereof.

6. Venue is proper in this Court because the bonded subcontract at issue in this case was to be performed in the City of Durham, Durham County, North Carolina.

7. All conditions precedent to the filing of this Civil Action have been satisfied.

**GENERAL ALLEGATIONS**

8. On or about August 10, 2016, MCL, as general contractor, entered into a written subcontract (the "Subcontract") with Oak City Contracting, Inc. ("Oak City"), as

first-tier subcontractor, for the performance of certain sitework and offsite improvements related to MCL's construction of an apartment complex known commonly as The Lodge at Croasdaile Farm, located in Durham, North Carolina (the "Project").

9. On or about August 25, 2016, Philadelphia, as surety, issued a performance bond, Bond No. PB00155800262 (the "Bond"), on behalf of Oak City, as bond principal, to secure Oak City's faithful performance of the Subcontract for MCL, as bond obligee. A true and accurate copy of the Bond is attached hereto as <u>Exhibit A</u>.

10. Paragraph 4 of the Bond recites express conditions precedent to triggering Philadelphia's performance obligations under the Bond. These express conditions precedent include a default by Oak City under the Subcontract, a declaration of Oak City's default by MCL, and MCL's performance of its obligations under the Subcontract.

11. Upon MCL's satisfaction of all conditions precedent to triggering Philadelphia's performance obligations under the Bond, Paragraph 4 of the Bond provides Philadelphia with the opportunity to elect one of the following performance options:

    4.1    **COMPLETE SUBCONTRACT.** Complete the Subcontract in accordance with its terms and conditions; or

    4.2    **OBTAIN NEW CONTRACTORS.** Obtain a bid or bids formally, informally or negotiated for completing the Subcontract in accordance with its terms and conditions, and upon determination by the Surety of the lowest responsible bidder, or negotiated proposal, or, if the Obligee elects, upon determination by the Obligee and the Surety jointly of the lowest responsible bidder, or negotiated proposal, arrange for a contract between such party and the Obligee. The Surety will make available as work progresses sufficient funds to pay the cost of completion less the balance of the contract price. The cost of completion includes responsibilities of the Principal for correction of defective work and completion of the Subcontract; the Obligee's legal

3

Case 1:19-cv-01105-WO-JLW    Document 1    Filed 10/31/19    Page 3 of 13

and design professional costs resulting directly from the Principal's default, and; liquidated damages or actual damages if no liquidated damages are specified in the Subcontract. The term "balance of the contract price," as used in this paragraph, shall mean the total amount payable by the Obligee to the Principal under the Subcontract and any amendments to it, less the amount properly paid by the Obligee to the principal; or

4.3 **PAY OBLIGEE.** Determine the amount for which it is liable to the Obligee and pay the Obligee that amount as soon as practicable; or

4.4 **DENY LIABILITY.** Deny its liability in whole or in part and notify and explain to the Obligee the reasons why the Surety believes it does not have responsibility for this liability.

12. On or about May 24, 2019, MCL sent Philadelphia a letter (the "May 24, 2019 Letter") notifying Philadelphia that "MCL is considering declaring Oak City in default and making a claim upon [the Bond]." (Emphasis supplied).

13. On or about May 29, 2019, Philadelphia sent MCL a letter via email acknowledging receipt of the May 24, 2019 Letter, expressing Philadelphia's understanding that MCL was "not making a claim against [the Bond] at this time," requesting copies of pertinent Project documentation, and reserving its rights.

14. On or about June 3, 2019, MCL sent Philadelphia an email stating that "Effective today, Oak City was terminated for abandoning the project." The email neither unequivocally declares Oak City in default of the Subcontract nor makes a claim against the Bond.

15. On or about June 5, 2019, representatives of Philadelphia, MCL, and Oak City participated in a teleconference to discuss the status of the Subcontract. During this teleconference, MCL stated that it intended to arrange for completion of the Subcontract

by allowing Oak City to either assign the Subcontract or sub-subcontract out the remainder of the Subcontract work to an entity related to Oak City, which Philadelphia later learned was Bull City Building Group, LLC ("Bull City"). Philadelphia warned during this call that if MCL pursued this intention, Philadelphia's rights under Paragraph 4 of the Bond could be prejudiced. MCL responded that it was not pursuing a claim under the Bond at that time.

16. On or about June 6, 2019, Philadelphia sent MCL a letter memorializing MCL's representation from the parties' teleconference that no claim existed against the Bond at that time.

17. On or about June 21, 2019, MCL sent Philadelphia a letter (the "June 21, 2019 Letter") stating that while the hiring of Bull City had been viewed earlier by MCL "as the most efficient and cost-effective manner in which to complete the Project," Bull City was "no longer interested in completing Oak City's scope of work on the Project. As a result, MCL is hereby making a claim against [the Bond] for the Project."

18. The June 21, 2019 Letter further acknowledged that the documents requested by Philadelphia on May 29, 2019 had yet to be provided, stating that "MCL is compiling those documents" and would produce them "in a timely manner."

19. MCL did not begin transmitting Project-related documents to Philadelphia until June 26, 2019. Most of the Project-related documentation received by Philadelphia was transmitted by MCL on July 8, 2019. Not all of the documents requested by Philadelphia on May 24, 2019 have been provided to it by MCL.

5

20. On or about July 11, 2019, MCL forwarded to Philadelphia a letter dated July 10, 2019 (the "July 10, 2019 Letter") from the Project owner, Croasdaile Farms Apartments Owner LLC ("Croasdaile Farms Apartments"), urging MCL to retain Capital City Grading, LLC ("Capital City Grading") immediately to complete Oak City's Subcontract. Upon information and belief, Croasdaile Farms Apartments had already hired or was in the process of hiring Capital City Grading directly at the time it sent MCL the July 10, 2019 Letter, with the intention of back-charging its prime contract with MCL for any and all payments made to Capital City Grading.

21. On or about July 16, 2019, MCL informed Philadelphia in writing that certain retention pond work within the scope of Oak City's remaining Subcontract work needed to be complete by the end of August 2019 because the City of Durham's Storm Water Services Development Review Section did not perform inspections of such facilities between September 1 and April 1 in any given calendar year.

22. On or about July 17, 2019, Croasdaile Farms Apartments informed MCL in writing that it had hired Capital City Grading directly to complete the retention pond work and that it was reserving its rights against MCL "to recover any costs or damages arising out of these and other issues with the Project."

23. Upon information and belief, Croasdaile Farms Apartments asserts that it is due at least $400,000 in damages from MCL in connection with the hiring of Capital City Grading and has back-charged or has threatened to back-charge MCL on account of said damages (the "Croasdaile Farms Apartments Back-Charge").

6

24. Further upon information and belief, MCL seeks to recover from the proceeds of the Bond the following: (a) the amount of the Croasdaile Farms Apartments Back-Charge; and/or (b) other purported damages that MCL alleges or may allege arise from Oak City's purported Subcontract default.

### FIRST CLAIM FOR RELIEF – DECLARATORY JUDGMENT
**(Failure of Conditions Precedent)**

25. Philadelphia realleges and incorporates by reference paragraphs 1-24 of its Complaint as if set forth fully herein.

26. There is a bona fide present controversy between Philadelphia and MCL concerning the rights and obligations of Philadelphia under the Bond.

27. Neither the May 24, 2019 Letter nor the June 21, 2019 Letter unequivocally declares Oak City in default of the Subcontract.

28. No other writing from MCL to Philadelphia constitutes an unequivocal declaration of Oak City's purported default of the Subcontract.

29. MCL has failed to satisfy the condition precedent set forth in Paragraph 4 of the Bond that MCL provide Philadelphia with an unequivocal declaration of Oak City's purported default of the Subcontract.

30. Philadelphia is entitled to a declaration that because MCL failed to declare Oak City unequivocally in default, Philadelphia has no obligation to MCL under the Bond, and that the Bond is null and void.

7

## SECOND CLAIM FOR RELIEF – DECLARATORY JUDGMENT
**(Prejudicial Deprivation of Surety's Bond Election)**

31. Philadelphia realleges and incorporates by reference paragraphs 1-30 of its Complaint as if set forth fully herein.

32. There is a bona fide present controversy between Philadelphia and MCL concerning the rights and obligations of Philadelphia under the Bond.

33. The earliest time at which MCL informed Philadelphia that it was making a claim against the Bond was June 21, 2019.

34. MCL failed to deliver most of the Project documentation that Philadelphia had requested on May 24, 2019 to facilitate its investigation until July 8, 2019.

35. Eight (8) calendar days after forwarding most of the Project documentation that had been requested by Philadelphia, MCL informed Philadelphia in writing of the criticality of completing retention pond work by the end of August 2019.

36. The following calendar day, Croasdaile Farms Apartments informed MCL that it had hired a separate contractor to perform the retention pond work.

37. At most, a mere nine (9) calendar days elapsed between MCL's delivery of most of the Project documentation to Philadelphia and Croasdaile Farms Apartments' hiring of a separate contractor to complete a significant portion of Oak City's remaining Subcontract work.

38. This nine-day period was insufficient to permit Philadelphia a meaningful opportunity to review the Project records it had received from MCL, inspect the work

8

completed under the Subcontract, analyze the tasks remaining for completion, develop a re-let bid package, solicit bids, award bids, and make an informed election under the Bond.

39. By failing to provide Philadelphia with timely, unequivocal notice of Oak City's purported default, by entertaining the employment of Bull City from May 24, 2019 – June 21, 2019 in lieu of declaring Oak City unequivocally in default and making a claim against the Bond, by failing to provide Project documentation to Philadelphia timely after the Bond claim was made, by failing to inform Philadelphia timely of the criticality of the retention pond work, and by accepting Croasdaile Farms Apartments' hiring of a separate contractor to perform a significant portion of Oak City's remaining Subcontract work, MCL deprived Philadelphia of its bargained-for opportunity to make an informed election under Paragraph 4 of the Bond.

40. Philadelphia is entitled to a declaration that because MCL deprived Philadelphia of its bargained-for opportunity to make an informed election under Paragraph 4 of the Bond, MCL has materially breached the Bond, Philadelphia has no obligation to MCL under the Bond, and the Bond is null and void.

### THIRD CLAIM FOR RELIEF – DECLARATORY JUDGMENT
**(Wrongful Termination of Principal)**

41. Philadelphia realleges and incorporates by reference paragraphs 1-40 of its Complaint as if set forth fully herein.

42. There is a bona fide present controversy between Philadelphia and MCL concerning the rights and obligations of Philadelphia under the Bond.

43. As of the date MCL purportedly terminated Oak City on June 3, 2019, only $69,418.90 of Oak City's $6,038,062.89 Subcontract Sum remained to be performed and billed; Oak City had performed over 98.85% of the Subcontract work.

44. As of the date of its purported termination, Oak City had substantially performed the Subcontract's requirements, and could not be terminated by MCL in June 2019 pursuant to the substantial performance doctrine. As a result, MCL's purported termination of Oak City on or about June 3, 2019 was wrongful.

45. Philadelphia is entitled to a declaration that because MCL wrongfully terminated Oak City after Oak City had substantially performed the Subcontract, MCL has materially breached the Subcontract, Philadelphia has no obligation to MCL under the Bond, and the Bond is null and void.

## FOURTH CLAIM FOR RELIEF – DECLARATORY JUDGMENT
### (Impairment of Collateral)

46. Philadelphia realleges and incorporates by reference paragraphs 1-45 of its Complaint as if set forth fully herein.

47. There is a bona fide present controversy between Philadelphia and MCL concerning the rights and obligations of Philadelphia under the Bond.

48. As of the date MCL delivered the May 24, 2019 letter to Philadelphia, accounting documents related to the Subcontract reveal that only $14,706.44 in work related to erosion control and the retention pond remained.

49. Upon information and belief, Croasdaile Farms Apartments has paid over $400,000 for retention pond work performed by Capital City Grading.

50. The discrepancy between what the accounting documents reveal was left to be performed in retention pond work and what Croasdaile Farms Apartments paid Capital City Grading to complete such work suggests that MCL released Subcontract funds to Oak City on account of retention pond work before such work was actually performed.

51. To the extent that MCL paid Oak City for retention pond work that had not yet been performed, such payment would be contrary to the terms of the Subcontract and impair Philadelphia's interest in the remaining Subcontract balance.

52. Philadelphia is entitled to a declaration that because MCL prematurely paid Oak City for retention pond work, MCL has impaired Philadelphia's interest in the remaining Subcontract balance, entitling Philadelphia to a total or pro tanto discharge under the Bond.

### FIFTH CLAIM FOR RELIEF – DECLARATORY JUDGMENT
### (Cardinal Change)

53. Philadelphia realleges and incorporates by reference paragraphs 1-52 of its Complaint as if set forth fully herein.

54. There is a bona fide present controversy between Philadelphia and MCL concerning the rights and obligations of Philadelphia under the Bond.

55. The original Subcontract Sum was $4,301,008.

56. Before MCL purported to terminate Oak City in June 2019, it issued no fewer than 37 change orders to Oak City, increasing the value of the Subcontract by $1,737,054.89, to a total of $6,038,062.89.

57. The 37 change orders issued by MCL to Oak City constitute an alteration in the Subcontract work so drastic that it effectively required Oak City to perform duties materially different from those originally bargained for. This drastic alteration constitutes a cardinal change to the Subcontract made without Philadelphia's knowledge or consent.

58. Philadelphia is entitled to a declaration that because MCL cardinally changed the Subcontract without Philadelphia's knowledge or consent, Philadelphia has no obligation to MCL under the Bond, and the Bond is null and void.

WHEREFORE, Philadelphia respectfully requests the following:

1. That the Court declare under 28 U.S.C. § 2201(a) the following:

    a. Pursuant to Philadelphia's First Claim for Relief, that Philadelphia has no obligation to MCL under the Bond, and that the Bond is null and void, due to MCL's failure to declare Oak City unequivocally in default of the Subcontract;

    b. Pursuant to Philadelphia's Second Claim for Relief, that Philadelphia has no obligation to MCL under the Bond, and that the Bond is null and void, due to MCL's depriving Philadelphia of its bargained-for opportunity to make an informed election under Paragraph 4 of the Bond;

    c. Pursuant to Philadelphia's Third Claim for Relief, that Philadelphia has no obligation to MCL under the Bond, and that the Bond is null and void, due to MCL's wrongful termination of Oak City after Oak City had substantially performed the Subcontract;

d.  Pursuant to Philadelphia's Fourth Claim for Relief, that Philadelphia is entitled to a total or pro tanto discharge under the Bond due to MCL's premature payment of Oak City for retention pond work; and

e.  Pursuant to Philadelphia's Fifth Claim for Relief, that Philadelphia has no obligation to MCL under the Bond, and that the Bond is null and void, because MCL cardinally changed the Subcontract without Philadelphia's knowledge or consent.

2. That the costs of this action, including, without limitation, attorneys' fees, be taxed against MCL; and

3. For such other and further relief as the Court deems just and proper.

This the 31st day of October, 2019.

                              **POYNER SPRUILL LLP**

By: s/ Matthew C. Bouchard
Matthew C. Bouchard
N.C. State Bar No. 35995
mbouchard@poynerspruill.com
P.O. Box 1801 (27602-1801)
301 Fayetteville St., Suite 1900
Raleigh, NC 27601
Telephone: 919-783-2887
Facsimile: 919-783-1075

*Counsel for Plaintiff Philadelphia Indemnity Insurance Company*